THOMAS F. HULBERT *v.* ZONING BOARD OF APPEALS OF THE TOWN OF WESTPORT ET AL.

KING, C. J., ALCORN, HOUSE, COTTER and THIM, JS.

Argued March 6—decided April 15, 1969

*Leo Nevas,* with whom, on the brief, was *Warner Alexander,* for the appellant (plaintiff).

*Edwin K. Dimes,* for the appellee (named defendant), and *Edward J. Capasse,* for the appellee (The Payne Building Corporation).

COTTER, J. The plaintiff appealed to the Court of Common Pleas from the action of the defendant board in granting an application for variances of the zoning regulations affecting land of the defendant The Payne Building Corporation wherein the corporation specifically requested waivers of (1) the uses and requirements in a residence A district, (2) the restrictions imposed upon a nonconforming building and (3) the maximum area requirements for building in a business district. From the judgment dismissing the appeal, the plaintiff appealed to this court.

The land in question, owned by the applicant corporation, abuts the plaintiff's property on two

sides. The plaintiff's property adjoins the entire southerly and westerly boundaries of the applicant's land for distances of 81.72 feet and 88.99 feet, respectively.

The following statements of fact, concurred in by the defendants, are pertinent to a decision in this case. In 1949, the plaintiff owned a parcel of land which included the parcel now owned by The Payne Building Corporation, hereinafter called Payne, as well as the property now owned by the plaintiff. The entire parcel was bisected by a zoning line so that the land to the east of that line was in a residential zone and the land to the west was in a business zone. In 1949, the plaintiff planned to move a building existing on this property, in the business zone area, to its present location, which is partly in a residential zone. The plaintiff filed a request with the zoning board of appeals for permission to use that building for business purposes in its new location. The board, on June 9, 1949, authorized the relocation of the building to its present location and granted a variance authorizing continued business use of the building.[1] The action of the board at the time applied solely to the building itself and did not affect the land which was located in the residential zone.

In 1954, the plaintiff sold the plot in question to Payne. The building thereon is located partially in a residential zone and partially in a business zone.

---

[1] The variance, granted in 1949, provided, inter alia, as follows: "Your appeal for a waiver of the Residence Clause of Section 3 (A) 2 of the Zoning Regulations as applied to the building which you propose to move from its present location on Main Street corner of Avery Place to a location on Avery Place partly within an "A" Residence Zone was granted yesterday afternoon, provided . . . that the present non-conforming tenants may continue occupancy with the understanding that any change of lease will require conforming occupancy."

At the time of sale in 1954, the land was not vacant but had a building on it which could be used in its entirety for business purposes. The deed to Payne granted, in common with others, the use of a parking area owned by the plaintiff. The lot conveyed to Payne contains room for ten to fourteen parking spaces, and such parking spaces were in use in 1954 and have continued in use to the present. The property of Payne had the same zoning status at the time it was purchased as at present, and a portion was utilized for parking then as now.

On August 30, 1966, Payne stated, in the present application to the zoning board of appeals for a variance, as a ground for hardship that "[i]t is impossible to use the existing buildings . . . partly for business and partly for residence." The application was essentially in two parts: The first part of the relief requested was concerned with the portion of the premises which is in the residential zone and for which the applicant requested a waiver of area, shape, height, coverage, setback, use and floor area requirements. Westport Zoning Regs., c. 3 § 3 (B), (C) (1958 as amended). In addition, it requested permission to expand a nonconforming building. Id., c. 2 § 2 (C) (1). The second portion of the application was concerned with the portion of the premises located in a business zone, for which the applicant requested a variance of the regulation limiting ground coverage of buildings to 75 percent of the lot area. Id., c. 5 (B) (6).

The board granted the variances requested without imposing any restrictions and did not limit its action to the plans submitted to the zoning board of appeals by the applicant. The unrestrained resolution of the board granting the variances was adopted in the following language: "That the application of Payne

Building Corporation be granted for a waiver of Chapter 3, Section 3-B and C, uses and requirements in Residence 'A' District; and Chapter 2, Section 2-C-1, to permit an addition to a non-conforming building, and Chapter 5-B-6, maximum area for building, on condition that a copy of the recorded deed authorizing parking in the present parking area be made a part of the record. Said property is located on the southerly side of Avery Place." The pertinent regulations are printed in the footnote.[2] The so-called waiver of chapter 3 § 3 (B) removes the requirement that land, buildings and other structures located in residential zones may be used only for certain enumerated purposes and allows the premises in question to be used for any purpose whatsoever. The waiver of § 3 (C) of chapter 3 removes all requirements as to lot area and shape, building height, ground coverage, floor area and setbacks for side yard, front yard and rear yard, which means in effect that, in that portion of the lot located

---

[2] "[Westport Zoning Regs.] CHAPTER 3. RESIDENCE DISTRICTS . . . Section 3. Residence A Districts: . . .

B. *Uses:* Land, buildings and other structures may be used only for any use permitted in Residence AAA Districts.

C. *Requirements:*

1. *Lot Area and Shape:* Each lot shall have a minimum area of one-half acre (21,780) square feet and shall be of such shape that an oblong 100 feet by 150 feet will fit on the lot.

2. *Height:* No dwelling or appurtenant or accessory structure shall exceed a height of 30' except as otherwise allowed by these regulations.

3. *Coverage:* The aggregate ground coverage of buildings and other structures on any lot shall not exceed 25% of the area of the lot.

4. *Floor Area:* Each dwelling shall have a minimum floor area on the ground floor of 1,000 square feet or shall have a floor area of 800 square feet on the ground floor and 400 square feet on the second floor.

5. *Setbacks:* No building or other structure shall extend

in the residential zone, the applicant can erect a structure of unlimited height covering the entire lot area without restriction as to its use. Waiver of chapter 2 § 2 (C) (1) removes any limitation on the expansion, extension or alteration of the present preexisting, nonconforming building located on that portion of the lot located in the residential zone. The waiver of chapter 5 (B) (6), applicable to that portion of the lot located in the business zone, means, in effect, that the portion of the building located in the business zone can be expanded to cover 100 percent of the lot area.

The zoning regulations of the town of Westport provide that the zoning board of appeals shall have the power, among others not apposite here, "[t]o determine and vary the application of the Zoning Regulations in harmony with their general purpose and intent and with due consideration for conserving the public health, safety, convenience, welfare and property values solely with respect to a parcel

within 30 feet of any street line, within 15 feet of any side property line or within 25 feet of any rear property line except, that on a corner lot no building or other structure shall extend within 30 feet of one street line and the minimum setback from the other street line shall either be 30 feet or a distance equal to 25% of the width of the lot, whichever is less."

"CHAPTER 2. GENERAL REQUIREMENTS . . .
Section 2. Non-Conforming Uses, Buildings and Lots . . .
C. *Non-Conforming Buildings*—(Definition: A non-conforming building is a building that does not conform to all the setback, coverage, floor area, height and other bulk standards as required in the zoning district in which the building is located.)
1. No non-conforming building may be expanded, extended or altered *if* such expansion, extension or alteration increases the degree to which the building does not conform to any particular requirement of the Zoning Regulations."

"CHAPTER 5. BUSINESS DISTRICTS . . .
B. *Requirements* . . .
6. *Maximum Area For Building.* Buildings shall not cover more than seventy five (75%) percent of the lot area."

of land where, owing to conditions especially affecting such parcel but not affecting generally the district in which it is situated, a literal enforcement of such Zoning Regulations would result in exceptional difficulty or unusual hardship, so that substantial justice will be done and public safety and welfare secured." Westport Zoning Regs., c. 10 § 3 (C) (3) (1958 as amended). In purporting to act under the regulations, the board cannot completely or substantially sweep away by unlimited and unrestrained waivers zoning regulations as they pertain to a particular parcel of property in the manner in which it was done under the circumstances of the present case. *Heady* v. *Zoning Board of Appeals,* 139 Conn. 463, 467, 468, 94 A.2d 789. In view of the unrestricted action taken by the board, it is unnecessary to consider the particular issue customarily presented wherein a board acts on an application involving exceptional difficulty or unusual hardship. Cf. *Ward* v. *Zoning Board of Appeals,* 153 Conn. 141, 215 A.2d 104.

The defendant Payne has a right to use, in common with others, the plaintiff's parking lot, which also services a small shopping center located on the plaintiff's land. Currently, part of Payne's property in the rear of its present building is used for parking. Under the board's action, Payne now has the right to build an addition to its present building out to the boundaries of its lot without regard to zoning restrictions. An addition to the Payne building, almost doubling its office and commercial use, and elimination of Payne's own parking area can considerably increase the burden thrown upon the plaintiff's parking area if Payne's new tenants and their invitees have occasion to park in the interior area behind the buildings. This can create an addi-

tional, heavy burden on the plaintiff's lot by adding to the movement of traffic and can promote congested and hazardous driving conditions due to the probable increase in use. The trial court specifically found that "[t]he construction of a building, pursuant to the waivers granted, would, more likely than not, require the use of the plaintiff's parking lot by the defendant, Payne Building Corporation." It is apparent that the board's decision affects the plaintiff in relation to a specific, personal interest. *Bright* v. *Zoning Board of Appeals,* 149 Conn. 698, 704, 183 A.2d 603. The premises owned and occupied by the plaintiff are directly affected by the variances granted, and he is an aggrieved person within the meaning of the General Statutes § 8-8. *Heady* v. *Zoning Board of Appeals,* supra, 468.

There is error, the judgment is set aside and the case is remanded with direction to sustain the appeal.

In this opinion KING, C. J., ALCORN and THIM, Js., concurred.

HOUSE, J. (dissenting). I cannot agree that the action of the defendant board did "completely or substantially sweep away by unlimited and unrestrained waivers zoning regulations as they pertain to a particular parcel of property" and that the variance as granted "allows the premises in question to be used for any purpose whatsoever" and "removes all requirements as to lot area and shape, building height, ground coverage, floor area and setbacks . . . which means in effect that . . . the applicant can erect a structure of unlimited height covering the entire lot area without restriction as to its use." I find no justification for such an interpretation of the variance granted by the defendant board.

The Payne Building Corporation filed only one application for a variance, and it was detailed and specific. It filed with the board of appeals a surveyor's map and a detailed architect's drawing, both to scale, showing precisely the size, height and location of the addition it proposed to build and for which it applied for a variance. The vote of the board of appeals, which is recited verbatim in the majority opinion, was not to grant an unrestrained waiver of all zoning regulations applicable to the property in question but a definite and limited one "[t]hat the application of Payne Building Corporation be granted for a waiver . . . to permit an addition to a non-conforming building . . . ." The precise limitations as to the extent of the zoning waivers sought and granted are readily and clearly apparent by reading the resolution of the board in context with the application sought and granted. In my opinion the majority decision results from an unwarranted refusal to read the vote of the board in context with the application to which it specifically refers.

The sole issue on this appeal was a jurisdictional one—whether the plaintiff was an aggrieved party for the purpose of appealing to the Court of Common Pleas from the decision of the board of appeals. *Hughes* v. *Town Planning & Zoning Commission,* 156 Conn. 505, 508, 242 A.2d 705. Aggrievement is a question of fact to be determined by the trial court. Ibid. That court found that the plaintiff had previously deeded to the Payne Building Corporation an unrestricted right, in common with others, to use his adjoining premises for parking, that there was no credible evidence of aggrievement, and hence that it lacked jurisdiction to decide the merits of the appeal. I find no error in the judgment rendered.